UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEITH RAWLINS,

                           Plaintiff,

       v.

DON MARLOW, et al.,

                           Defendant.

CASE NO. C19-466-TSZ-BAT

**REPORT AND
RECOMMENDATION**

Plaintiff, Keith Rawlins, proceeds pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C § 1983. Mr. Rawlins commenced this action by filing a civil rights complaint on March 28, 2019, naming as defendants Don Marlow, Chief of Corrections at Skagit County Community Justice Center (SCCJC), and L. Harlan, correctional officer at SCCJC. Dkts. 1, 5. On May 30, 2019, defendants Harlan and Marlow each filed separate motions seeking dismissal of the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or summary judgment pursuant to Fed. R. Civ. P. 56. Dkts. 14, 15. The same day Mr. Rawlins also filed an amended complaint again naming defendants Harlan and Marlow and alleging additional claims against new defendants Randall-Secrest, Lieutenant at SCCJC, Pollie Storie, Sergeant at

REPORT AND RECOMMENDATION - 1

SCCJC, and C/O Kwant[1], corrections officer at SCCJC. Dkt. 18. Defendants Harlan and Marlow opposed the amendment of the complaint. Dkt. 20. Mr. Rawlins opposed defendants' motions arguing they are improper in light of his amended complaint and that defendants are not entitled to dismissal. Dkts. 23, 24. Mr. Rawlins subsequently moved to strike defendants' motions to dismiss and related documents (Dkts. 14, 15, 16, 17) in light of his amended complaint. Dkt. 25. On June 28, 2019, Mr. Rawlins also filed a document entitled "addendum" to the amended complaint. Dkt. 27.

The Court recommends that Mr. Rawlin's amended complaint (Dkt. 18) be accepted and deemed properly filed. The Court further recommends that the "addendum" (Dkt. 27) to the amended complaint be stricken as improperly filed and not properly before the Court. The Court recommends that Mr. Rawlins' motion to strike defendants' motions to dismiss/for summary judgment and related documents (Dkts. 14, 15, 16, 17) be denied as defendants' motions may still be considered in light of the amended complaint.

Having considered defendants' motions in light of and as applied to the amended complaint, the Court recommends that both defendant Marlow and defendant Harlan's motions be granted. The Court has further screened the amended complaint as required by 28 U.S.C. §§ 1915A and 1915(e) and recommends that Mr. Rawlins' claims against defendant c/o Kwant be permitted to proceed and that the remaining claims be dismissed without prejudice for failure to state a claim. The Court recommends that the Clerk be directed to serve the amended complaint on c/o Kwant only and that this matter be referred back to Hon. Brian A. Tsuchida for further proceedings.

---

[1] The Court notes that c/o Kwant is not listed as a defendant on the docket but is listed as such in the amended complaint. Dkt. 18. Accordingly, the Court recommends that the Clerk be directed to add c/o Kwant as a named defendant on the docket.

# BACKGROUND

**A.   General Plumbing and Sanitation Issues**

In his amended complaint, Mr. Rawlins alleges that there have been ongoing plumbing issues at the SCCJC over the fourteen months he has been incarcerated. Dkt. 18. He alleges there was no hot water for showers for several months, that the drains stop up in the showers, that inmates were told not to drink the hot water for several weeks, and that cleaning is insufficient in that it is not done daily or even weekly, forcing inmates to shower in unsanitary conditions. *Id.* He further alleges that the plumbing issues have resulted in small flying insects, spiders and flies in cells, showers and day rooms. *Id.* He also alleges that on one occasion sewage came up through the drain and into the day room. *Id.*

**B.   Toilet in K-107 and Disciplinary Charge**

Mr. Rawlins alleges in mid-June 2018 the toilet in his cell, K-107, began plugging up and stopped draining. Dkt. 18. He contends the contents were building daily and he was unable to flush. *Id.* He contends he made numerous requests to maintenance which went unanswered and that he tried to plunge the toilet but was unsuccessful. *Id.* He alleges he was forced to stay in this cell for over 1 week in these conditions and that he and his cell mate were forced to urinate in the sink during lockdown. *Id.* He alleges on June 20, 2018, the toilet was auto flushed by control causing it to overflow into his cell. *Id.* He states he was then permitted to move to a different cell for several days while the toilet was repaired. *Id.* Mr. Rawlins indicates that several days later c/o Kwant issued him a "disciplinary" charging him with intentionally/recklessly damaging county property (i.e. the toilet). *Id.* He indicates he requested a hearing but a hearing was never conducted and he received two days of disciplinary segregation without Due Process. *Id.*

**C.   Placement in M-104**

Mr. Rawlins alleges he was moved from K-107 to M-104 by c/o Harlan pursuant to orders from Sergeant Storie. Dkt. 18, at 6-7. He alleges the floor was covered with fecal matter from an overflowed toilet and toxic wasted covered the floor from the sink to well under the bed and smelled horrible. *Id.* He alleges he requested to be moved to a different cell and cleaning supplies but his requests were denied. *Id.* He says he was left in the cell for "several hours" and served lunch there. He states he continued to be locked down in the cell with no cleaning supplies for "several more hours." *Id.*

**D.    Mentally Ill Inmates**

Mr. Rawlins contends that in each tank he has been housed in he has been exposed to severely mentally ill inmates mixed with the general population who are not being provided necessary evaluation and treatment. Dkt. 18, at 9-10. He alleges he has seen inmates screaming, kicking, smearing feces on doors, urinating on other inmates, threats of violence, death, breaking things, and gang violence. *Id.* He contends this creates a dangerous environment and causes unnecessary stress anxiety and frustration with the "psychologically normal inmates." *Id.*

**E.    Injury**

Mr. Rawlins contends he has experienced extreme psychological effects due to prolonged exposure to unsanitary, disruptive and dangerous conditions including: sleep deprivation, anxiety, stress, headaches, dizziness, panic attacks, heart palpitations, and depression. Dkt. 18, at 8-9.

**F.    Legal Mail/Access to Legal Supplies**

Mr. Rawlins contends jail staff used "intrusive practices" into confidential legal correspondence with his public defender, the courts, and legal organizations. Dkt. 18, at 10-11. He contends Sergeant Storie delayed and denied him access to contact his government and to

- 4

1 notary services. *Id.* He contends the facility requires inmates to purchase postage to correspond

2 with courts and counsel but that this postage is supposed to be provided at the state's expense. *Id.*

3 Mr. Rawlins contends Sergeant Storie has refused to provide requested legal information

4 addressed in policy 6-3.5 which states written materials addressing how an inmate can access

5 local attorneys and key legal documents shall be available in each housing unit. *Id.*

6 **G.     Chief Marlow**

7        Mr. Rawlins contends he "must assume that Chief Marlow is responsible for training,

8 conduct, and discipline of all correctional staff members … as well as revising and enforcing

9 policies, protocols, and procedures. Dkt. 18, at 13.

10 **H.     Lieutenant Randall-Secrest**

11        Mr. Rawlins contends Lieutenant Randall-Secrest was aware of or should have been

12 aware of these repeatedly grieved issues and personally answered several replies and grievances

13 with ignorant remarks. Dkt. 8, at 13. He further alleges Randall-Secrest refused to re-house him

14 after his disciplinary segregation was over. *Id.*

15 **I.     Retaliation**

16        Mr. Rawlins contends he believes his latest transfer to M-tank was done in retaliation for

17 his prior civil rights actions. Dkt. 18, at 8.

18                              **DISCUSSION**

19 **A.     Amended Complaint**

20        Federal Rule of Civil Procedure 15 provides:

21        (a) Amendments Before Trial.
         (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of
22       course within:
         (A) 21 days after serving it, or
         (B) if the pleading is one to which a responsive pleading is required, 21 days after service
23       of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f),
         whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Defendants oppose the filing of Mr. Rawlin's amended complaint on the grounds that it was not made as a motion and fails to comply with Local Rule 15. Dkt. 20. Mr. Rawlins appears to have *served* his amended pleading more than 21 days after service of the complaint and a few days prior to defendants' service of their motions to dismiss. However, the amended complaint was received and *filed* by the Court on the same day as, (i.e. within 21 days of), the filing of defendants motions to dismiss/for summary judgment. Dkts. 14, 15, 17, 18. The Court recommends that Mr. Rawlin's amended complaint be deemed properly filed as an amendment as a matter of course as it substantially complies with the requirements of Fed. R. Civ. P. 15(a)(1).

Alternatively, the Court recommends that Mr. Rawlins be granted leave to file his amended complaint. In determining whether to allow an amendment to a complaint Courts consider the following factors: "the presence or absence of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 538 (9th Cir.1989). The Court sees no evidence of undue delay, bad faith or dilatory motive on the part of Mr. Rawlins in seeking to amend his complaint at this early point in the litigation. Furthermore, the Court sees no undue prejudice to the defendants as the amendment is sought early in the litigation and the Court will still consider defendants' motions to dismiss/for summary judgment in light of the amended pleading. Furthermore, the Court does not find the proposed amendment to be futile as Mr. Rawlins has stated sufficient facts in his amended complaint to move forward with one of his claims.

**B.      Relevant Legal Standards: 42 U.S.C. § 1983, Motions for Summary Judgment, and 28 U.S.C. §§1915A, 1915(e) Screening**

1    A pretrial inmate may bring an action for violation of his constitutional rights under 42

2    U.S.C. § 1983 if he can show that (1) a state actor (2) violated his constitutional rights.  *Gibson*

3    *v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

4    Defendants move for dismissal for failure to state a claim pursuant to Fed. R. Civ. P.

5    12(b)(6) or for summary judgment pursuant to Fed. R. Civ. P. 56. Dkts. 14, 15. When matters

6    outside the pleadings are presented and not excluded by the court, the motion should be treated

7    as a motion for summary judgment governed by Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b). Here,

8    defendants submit evidence outside of the pleadings in support of their motions including several

9    declarations as well as a screenshot of a security video. *Id.* Accordingly, the Court will consider

10   defendants' motions under the summary judgment standard as governed by Fed. R. Civ. P. 56.

11   The Court shall grant summary judgment if the movant shows that there is no genuine

12   dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

13   Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence

14   of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

15   1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce

16   any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

17   absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato*

18   *Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  A nonmoving party's failure to comply with local

19   rules in opposing a motion for summary judgment does not relieve the moving party of its

20   affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v.*

21   *Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

22   "If the moving party shows the absence of a genuine issue of material fact, the non-

23   moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson*, 477 U.S. at 248.  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

The Prison Litigation Reform Act ("PLRA") obligates the Court to "review before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A. Under this provision, the Court may *sua sponte* dismiss any prisoner complaint, or any portion thereof, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks damages from defendants who are immune. *Id.*; *Resnick v. Hayes,* 213 F.3d 443, 446 (9th Cir. 2000).

C.    **Defendant Marlow's Motion for Summary Judgment**

Mr. Rawlins makes general allegations in his amended complaint regarding ongoing plumbing issues, unsanitary conditions, insufficient cleaning, and housing of mentally ill inmates with non-mentally ill inmates at SCCJC. Dkt. 18. He also makes specific allegations regarding his housing in K-107 with a stopped up toilet, his placement in unsanitary conditions in cell M-

104, his disciplinary charges without due process, intrusive practices of jail staff with respect to his legal mail, and access to legal materials. *Id.* Mr. Rawlins contends he must assume Chief Marlow is responsible for training, conduct, and discipline of correctional staff as well as revising and enforcing policies. *Id.*

Defendant Marlow moves for summary judgment dismissing Mr. Rawlins' claims against him on the grounds that he fails to allege or establish any personal involvement by defendant Marlow or identify any polices or procedures of the jail that caused the claimed violations. Dkt. 15. Defendant Marlow submits a declaration in support of his motion in which he indicates he does not know Mr. Rawlins and as far as he knows has not spoken to or had contact with him. Dkt. 15-1. He states he has not been involved in any decisions that affected Mr. Rawlins' classification, housing, discipline, grievances, or access to the court. *Id.* He states he is not involved in the classification of inmates, that he was not aware of any issue regarding Mr. Rawlins' placement in M-pod until he received Mr. Rawlins' complaint. *Id.* He states he has never been made aware of sewer issues causing backups in any pods or cells, that if any significant situations occurred he would have been informed, that pods are cleaned regularly and that he had never been called on to address issues of insufficient cleaning or insects in cells. *Id.* He further states that issues regarding placement of individual inmates with mental health issues is an issue of classification which he is not involved with. *Id.* Mr. Rawlins argues in opposition to defendant Marlow's motion that "defendant Marlow is clearly a policy maker and supervisor to all corrections staff employed at the jail and all policies, procedures, practices and protocols are under his authority." Dkt. 24.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior. *Hansen v. Black*, 885 F.2d 642, 646 (9th

Cir.1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

Therefore, a plaintiff must present sufficient evidence to raise a genuine dispute of fact that

defendant Marlow either personally participated in the alleged deprivation of constitutional

rights, knew of the violations and failed to act to prevent them, or promulgated or implemented a

deficient policy that 'itself is a repudiation of constitutional rights' and is 'the moving force of

the constitutional violation.'" *Id.* Mr. Rawlins offers no evidence to refute defendant Marlow's

declaration that he was not personally involved in, was not aware of, and did not promulgate or

implement a deficient policy responsible for the issues Mr. Rawlins complains of. Mr. Rawlins

argues only that "defendant Marlow is clearly a policy maker and supervisor to all corrections

staff employed at the jail and all policies, procedures, practices and protocols are under his

authority." Dkt. 24. Mr. Rawlins' conclusory contention that defendant Marlow is liable for the

alleged constitutional violations because he is generally responsible for his employees and for

jail operations as a whole is insufficient to raise a genuine dispute of fact with respect to

defendant Marlow's liability.

Accordingly, defendant Marlow's motion for summary judgment should be granted and

the claims against him in the amended complaint should be dismissed with prejudice.

**D.    Defendant Harlan's Motion for Summary Judgment**

Mr. Rawlins alleges in his amended complaint that he was moved from K-107 to M-104

by c/o Harlan pursuant to orders from Sergeant Storie. Dkt. 18, at 6-7. He alleges the floor was

covered with fecal matter from an overflowed toilet and toxic wasted covered the floor from the

sink to well under the bed and smelled horrible. *Id.* He alleges he requested to be moved to a

different cell and cleaning supplies but his requests were denied. *Id.* He says he was left in the

cell for "several hours" and served lunch there. *Id.* He states he continued to be locked down in

the cell with no cleaning supplies for "several more hours." *Id.* Defendant Harlan moves to

dismiss the claims against him on several grounds including that his actions in placing Mr.

Rawlins in the cell were objectively reasonable and he did not act with deliberate indifference in

violation of Mr. Rawlins' Fourteenth Amendment rights.

As a pretrial detainee, Mr. Rawlins has the right to be free from punishment under the

Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). The test for identifying

unconstitutional punishment at the pretrial stage of a criminal proceeding requires a court to

examine "whether there was an express intent to punish, or 'whether an alternative purpose to

which [the restriction] may rationally be connected is assignable for it, and whether it appears

excessive in relation to the alternative purposes assigned [to it].'" *Demery v. Arpaio*, 378 F.3d

1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "Absent a showing of an expressed

intent to punish on the part of detention facility officials, that determination generally will turn

on 'whether an alternative purpose to which [the restriction] may rationally be connected is

assignable for it, and whether it appears excessive in relation to the alternative purpose assigned

[to it].'" *Id.* (citations omitted). "For a particular governmental action to constitute punishment,

(1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of

the governmental action must be to punish the detainee." *Demery*, 378 F.3d at 1029. Further, to

constitute punishment, the harm or disability caused "need not be independently cognizable as a

separate constitutional violation." *Id.* Rather "to constitute punishment, the harm or disability

caused by the government's action must either significantly exceed, or be independent of, the

inherent discomforts of confinement." *Id.*, at 1030.

The Court evaluates a pretrial detainee's Fourteenth Amendment claim under an

objective deliberate indifference standard.  *See Gordon v. County of Orange*, 888 F.3d 1118,

1124-25 (9th Cir. 2018) (applying objective standard to medical care claims and describing

similar treatment afforded medical care and other conditions of confinement claims) (citing

*Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015), and

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016), *cert. denied*, 137 S. Ct.

831, 97 L. Ed. 2d 69 (2017)).[2] A pretrial detainee must demonstrate a defendant's acts or

omissions were objectively unreasonable, and identify objective facts indicating the "challenged

governmental action is not rationally related to a legitimate governmental objective or that it is

excessive in relation to that [objective]."   *Kingsley*, 135 S. Ct. at 2473-74. This determination is

to be made keeping in mind that "[s]uch considerations are peculiarly within the province and

professional expertise of corrections officials, and, in the absence of substantial evidence in the

record to indicate that the officials have exaggerated their response to these considerations,

courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 547-48

(internal quotations and citations omitted).

      The Supreme Court has recognized that "maintaining institutional security and preserving

internal order and discipline are essential goals that may require limitation or retraction of the

retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S.

at 546. The Supreme Court has further recognized that prison administrators "should be accorded

wide-ranging deference in the adoption and execution of policies and practices that in their

---

[2] Previously, "all conditions of confinement claims, including claims for inadequate medical care, were analyzed under a subjective deliberate indifference standard whether brought by a convicted prisoner under the Eighth Amendment or pretrial detainee under the Fourteenth Amendment."  *Gordon*, 888 F.3d at 1122-23 (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242-43 (9th Cir. 2010)).  Although the Ninth Circuit has not expressly extended the objective deliberate indifference standard to all pretrial detainee conditions of confinement claims beyond a denial of medical care, failure-to-protect, and to excessive force claims, the decision in *Gordon* strongly suggests it will do so.  *See Gordon*, 888 F.3d at 1120, 1124, and 1124 n.2 (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)).

1   judgment are needed to preserve internal order and discipline and to maintain institutional

2   security." *Bell*, 441 U.S. at 547.

3       An institution must provide prisoners and pretrial detainees "adequate food, clothing,

4   shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th

5   Cir. 1982); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996), *overruled on*

6   *other grounds in Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008). However, the

7   Constitution "does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349

8   (1981). Conditions of confinement "may be, and often are, restrictive and harsh[.]" *Morgan v.*

9   *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Rhodes*, 452 U.S. at 347). "[N]ot every

10  disability imposed during pretrial detention constitutes 'punishment' in the constitutional sense."

11  *See Bell*, 441 U.S. at 537.

12      The Court considers conditions challenged by an inmate separately. *See Wilson v. Seiter*,

13  501 U.S. 294, 304-05 (1991); *Hoptowit*, 682 F.2d at 1246-47. As stated by the United States

14  Supreme Court in relation to Eighth Amendment claims:

15          Some conditions of confinement may establish an Eighth
            Amendment violation "in combination" when each would not do
16          so alone, but only when they have a mutually enforcing effect that
            produces the deprivation of a single, identifiable human need such
17          as food, warmth, or exercise—for example, a low cell temperature
            at night combined with a failure to issue blankets.
18
19  *Wilson*, 501 U.S. at 305. In other words, "[n]othing so amorphous as 'overall conditions' can rise

20  to the level of cruel and unusual punishment when no specific deprivation of a single human

    need exists." *Id.*

21      In support of his motion, defendant Harlan submits a declaration stating that Mr. Rawlins

22  was moved to cell M-104 on March 11, 2019, because he was making pruno (a fermented

23  alcohol drink made of fruit, vegetables and sugar) in his cell in violation of jail policy. Dt. 14-1.

1    Defendant Harlan states that Mr. Rawlins was moved to M-pod because he had a history of

2    making pruno in his cell when he was housed in a cell with another inmate. *Id.* Thus, based upon

3    classification, Mr. Rawlins was moved to the M-pod so that his conduct could be isolated from

4    other inmates. *Id.* Defendant Harlan states that when he moved Mr. Rawlins to M-104 he recalls

5    that he pointed out some things on the floor of the cell and refused to go in. *Id.* He indicates what

6    Rawlins was pointing to appeared to be a few crumbs of food on the floor near the bed. *Id.* He

7    states he directed Mr. Rawlins to go into the cell and told him that cleaning gear could be

8    provided to him. *Id.* Defendant Harlan states that had the items he observed appeared to have

9    been toilet paper or feces, he would have cleaned it up himself or located another cell to place

10   Mr. Rawlins in at that time. *Id.* Defendant Harlan also indicates that he downloaded the security

11   system video of cell M-104 at the time Mr. Rawlins was moved in and attaches a copy of that

12   screen shot in support of his motion. *Id.* The Court notes that while a small portion of the

13   screenshot (which the Court presumes to be the toilet) is blocked out, the remainder of the cell,

14   including the sink, the floor and the bed are visible in the picture. The floor in the picture appears

15   to support defendant Harlan's declaration and does not appear to be covered with "fecal matter"

16   and "toxic waste … from the sink to well under the bed." Dkt. 18.

17        In opposing the motion, Mr. Rawlins states that defendant Harlan is "clearly aware of

18   policies, procedures, practices and protocols involving sanitation of inmate housing areas and

19   classification and treatment of pretrial detainees." Dkt. 23. He argues his amended complaint

20   "trumps" defendant's motion and that the motion should be stricken. *Id.* He also argues summary

21   judgment is premature. *Id.*

22        Defendant Harlan presents sufficient evidence in support of his motion to establish that

23   he did not act with deliberate indifference in violation of Mr. Rawlins' Fourteenth Amendment

Rights. The evidence shows that Mr. Rawlins' placement in M-pod was rationally related to the

legitimate governmental objective of maintaining jail safety and security in preventing Mr.

Rawlins from making pruno in his cell. The evidence submitted of the screenshot of M-104 at

the time of Mr. Rawlins transfer does not show the floor covered with "fecal matter" and "toxic

waste … from the sink to well under the bed." Mr. Rawlins does not dispute the authenticity of

the screenshot or otherwise challenge or specifically dispute the evidence submitted by defendant

Harlan. Thus, the evidence before the Court indicates that defendant Harlan's actions in placing

Mr. Rawlins in M-104 for several hours were not objectively unreasonable, were rationally

related to a legitimate governmental objective, and did not amount to punishment in violation of

the Fourteenth Amendment.

Mr. Rawlins fails to raise a genuine issue of material fact in opposition to defendant

Harlan's motion. Mr. Rawlins argues that his amended complaint should "trump" defendant's

motion and that summary judgment is premature. Dkt. 23. However, nothing in the amended

complaint alters the relevance, viability or merit of defendant Harlan's motion and Mr. Rawlins

fails to identify any specific reasons why summary judgment should not be granted even at this

early stage, in light of defendant Harlan's evidence. *Id.* Mr. Rawlins does not argue he is unable

to present necessary facts to justify his opposition[3] to the motion but simply states, in conclusory

fashion, that summary judgment is premature. *Id.*

Accordingly, defendant Harlan's motion for summary judgment (Dkt. 14) should be

---

[3] Fed. R. Civ. P. 56(d) which governs summary judgment provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer consideration of the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

1    granted and the claims against him should be dismissed with prejudice.[4]

2    **E.    28 U.S.C. §§1915A, 1915(e) Screening**

3    The Court has also screened the remainder of the amended complaint as required by 28

4    U.S.C. §§ 1915A and 1915(e).

5    **1.    C/O Kwant**

6    Mr. Rawlins alleges that c/o Kwant issued him a "disciplinary" charging him with

7    intentionally/recklessly damaging county property (i.e. the toilet). Dkt. 18. He indicates he

8    requested a hearing but a hearing was never conducted and he received two days of disciplinary

9    segregation without Due Process. *Id.*

10   Under the Fourteenth Amendment's Due Process Clause, pretrial detainees may not be

11   punished. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, if a particular condition or

12   restriction of pretrial detention is reasonably related to a legitimate governmental objective, it

13   does not, without more, amount to "punishment." *Bell*, 441 U.S. at 539; *Valdez v. Rosenbaum*,

14   302 F.3d 1039, 1045 (9th Cir. 2002).

15   "[A] pretrial detainee may not be punished without a due process hearing." *Mitchell v.*

16   *Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). This does not mean pretrial detainees "are free to

17   violate jail rules with impunity." *Id.* (noting that *Bell* recognizes need for preserving internal

18   order and discipline among pretrial detainees). Rather, pretrial detainees "may be subjected to

19   disciplinary" action, but only if first accorded "a due process hearing to determine whether they

20   have in fact violated any rule." *Id.* Due process requires a written notice of the charges at least 24

21   hours prior to the disciplinary hearing, allowing the inmate to call witnesses and present

22

23   ────────────────────

[4] Because the Court recommends granting defendant Marlow and defendnat Harlan's motions for summary judgment on the basis discussed above, it need not address the other grounds raised by defendants' motions.

1   documentary evidence in his defense when permitting him to do so will not be unduly hazardous

2   to institutional safety or corrections goals, and a written statement as to the evidence relied on

3   and reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-565 (1974)

4   (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

5        Here, Mr. Rawlins indicates he requested a hearing based on the alleged violation but that

6   he never received a hearing but received disciplinary segregation as a result of the charge. Mr.

7   Rawlins has stated sufficient facts to proceed with his due process claim against c/o Kwant.

8   Accordingly, the Court recommends that if the report and recommendation is adopted, that the

9   Clerk be directed to serve the amended complaint on c/o Kwant only and that the matter be

10  referred back to Hon. Brian A. Tsuchida for further proceedings.

11            2.  **Sergeant Storie**

12       Mr. Rawlins alleges that he was placed in M-104 by defendant Harlan per orders of

13  Sergeant Storie. Dkt. 18. However, Mr. Rawlins fails to allege any facts explaining why he

14  believes this to be the case nor does he allege any facts to indicate that Sergeant Storie was aware

15  of the conditions of the cell and chose to place him there or keep him there despite those alleged

16  conditions. Such conclusory allegations are insufficient to state a claim. Furthermore, as noted

17  above, defendant Harlen is entitled to summary judgment on Mr. Rawlins' conditions of

18  confinement claim and, by extension, Mr. Rawlins cannot succeed on his claim against Sergeant

19  Storie on the same factual basis. As such, Mr. Rawlins fails to state a claim against Sergeant

20  Storie with respect to his placement in unsanitary conditions in cell M-104.

21       Mr. Rawlins also contends Sergeant Storie delayed and denied him access to contact his

22  government and to notary services and refused to provide requested legal information addressed

23  in policy 6-3.5 which states written materials addressing how an inmate can access local

1    attorneys and key legal documents shall be available in each housing unit. However, Mr.

2    Rawlins fails to explain when and how Sergeant Storie allegedly took these actions, nor does he

3    explain how such actions violated his constitutional rights.

4            To the extent Mr. Rawlins is attempting to allege a violation of his right of access to

5    courts, his allegations fail to state a claim. Inmates have a fundamental constitutional right of

6    access to the courts and prison officials may not actively interfere with a plaintiff's right to

7    litigate. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Phillips v. Hust*, 588 F.3d 652, 655 (9th

8    Cir.2009). Courts have traditionally differentiated between two types of access claims, those

9    involving the right to affirmative assistance, and those involving inmate's right to litigate without

10   active interference. *Silva v. DiVittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011). The right to

11   assistance is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*,

12   518 U.S. at 354. Prisoners also have the right to pursue claims, without active interference, that

13   have a reasonable basis in law or fact. *Silva*, 658 F.3d at 1103–04. This right forbids state actors

14   from erecting barriers that impede the right of access to the courts of incarcerated persons. *Silva*,

15   658 F.3d at 1102 (internal quotations omitted).

16           To establish a violation of the right of access to courts, an inmate must show actual

17   injury. Actual injury results from "some specific instances in which an inmate was actually

18   denied access to the courts." *Sands v. Lewis*, 886 F.2d 1166, 1170–71 (9th Cir.1989). Moreover,

19   a prison regulation impinging on inmates' constitutional rights, even a right of access to the

20   courts, is valid if it is reasonably related to legitimate penological interests. *See Lewis*, 518 U.S.

21   at 353 (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

22

23

1    There is no "abstract, freestanding right to a law library or legal assistance." *Bounds v.*

2   *Smith*, 430 U.S. 817 (1977).  A plaintiff cannot establish a constitutional injury simply by

3   alleging that the prison law library or legal assistance program was infirm in some

4   theoretical sense.  *Lewis*, 518 U.S. at 350-51.  Rather, he must allege facts and on summary

5   judgment, must show evidence, that the shortcomings of the law library resulted in an actual

6   injury with respect to existing or contemplated litigation, such as the inability to present a claim

7   or to meet a filing deadline.  *See id*. at 348.

8    Here, to the extent Mr. Rawlins is attempting to allege a violation of his right of access to

9   the courts he fails allege any actual injury, and as such, fails to state a claim. As Mr. Rawlins has

10   already amended his complaint once, and it appears unlikely he can cure these defects through

11   further amendment, the Court recommends that the claims against Sergeant Story be dismissed

12   without prejudice.

13       **3.  Retaliation**

14    Mr. Rawlins also contends he believes his latest transfer to M-tank was done in

15   retaliation for his prior civil rights actions. *Id.*, at 8. To the extent Mr. Rawlins intends to allege a

16   separate retaliation claim, such a speculative and conclusory statement is insufficient to do so. To

17   state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An

18   assertion that a state actor took some adverse action against an inmate (2) because of (3) that

19   prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

20   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

21   *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

22    A plaintiff must specifically identify the protected conduct at issue, name the defendant

23   who took the adverse action against him, and plead that the allegedly adverse action was taken

"because of" plaintiff's protected conduct.  *See Soranno's Gasco,* 874 F.2d at 1314 (internal citations omitted) (plaintiff must show that his protected conduct "was a substantial or motivating factor behind the defendant's decision.").The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation.  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). The burden is on the plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains.  *See Pratt,* 65 F.3d at 808.

Here, Mr. Rawlins fails to allege when this "latest" transfer took place nor does he allege any facts, beyond his own speculation, to indicate he was transferred because of his prior civil rights complaint or that the transfer did not reasonably advance a legitimate correctional goal. The Court recommends that this claim be dismissed without prejudice.

### 4.    General Plumbing and Sanitation Issues, Mentally Ill Inmates, Housing in K-107

With respect to Mr. Rawlins' general allegations regarding ongoing plumbing issues, unsanitary conditions, insufficient cleaning, housing of mentally ill inmates with non-mentally ill inmates at SCCJC, and allegations regarding his housing in K-107 with a stopped up toilet, his amended complaint fails to connect these claims with a proper defendant. The only defendant identified in the amended complaint who is arguable connected to these claims is defendant Marlow. As discussed above, the Court recommends granting defendant Marlow's motion for summary judgment and dismissing those claims with prejudice. No other individual defendants are identified in connection with these claims in the amended complaint.

### 5.   Legal Mail

1    Mr. Rawlins contends jail staff used "intrusive practices" into confidential legal

2    correspondence with his public defender, the courts, and legal organizations. Dkt. 18, at 10-11.

3    He contends the facility requires inmates to purchase postage to correspond with courts and

4    counsel but that this postage is supposed to be provided at the state's expense. *Id.*

5    Again, Mr. Rawlins conclusory and vague allegations fail to set forth sufficient facts to

6    state a claim. He fails to identify a defendant allegedly responsible for the "intrusive practices"

7    nor does he describe what he means by intrusive practices.

8    Prisoners retain their First Amendment rights to the extent those rights are "not

9    inconsistent with his status as a prisoner or with the legitimate penological objectives of the

10    corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Clement v. Cal. Dep't.*

11    *of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004) (per curiam).  Among those rights generally

12    retained is the right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995)

13    (per curiam).  Restrictions on First Amendment rights are valid in the corrections context as long

14    as the restriction is "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482

15    U.S. 78, 89 (1987).

16    The inspection of prisoners' incoming and outgoing mail has long been among those

17    reasonable limitations on prisoner mail. *See e.g. Wolff v. McDonnell*, 418 U.S. 539 (1974);

18    *Sherman v. MacDougall*, 656 F.2d 527 (9th Cir. 1981).  Prisoners' interest in attorney

19    communications is greater, and generally, such letters should likely not be opened and read

20    outside the presence of the prisoner.  *See Wolff*, 418 U.S. at 576-77; *Nordstrom v. Ryan*, 762 F.3d

21    903, 909-11 (9th Cir. 2014) (inmate's written communications with their criminal defense

22    attorneys may be inspected or scanned but may not be read as such practice would be 'highly

23    likely' to chill inmates' Sixth Amendment rights.). This special consideration for "legal mail"

applies only to direct communications between the prisoner and his attorney. *See Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998); *also O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996); *Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988). Additionally, correctional facilities may require correspondence between prisoners and their counsel to be appropriately marked and for counsel to identify themselves to the facility prior to mailing privileged communication. *Wolff*, 418 U.S. at 576-577. In addition, an isolated instance or occasional opening of a prisoner's legal mail, outside of his presence, does not violate the Constitution. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir.1989) (guard's opening of legal mail outside of inmate's presence was, at most, negligence, and did not reach the level of intent necessary for constitutional violation).

Here, Mr. Rawlins alleges "intrusive practices" by jail officials but nothing further. Thus, to the extent Mr. Rawlins attempts to allege a violation of his First or Six Amendment rights, he fails to state a claim. This claim should be dismissed without prejudice.

### 6. Lieutenant Randall-Secrest

Mr. Rawlins contends Lieutenant Randall-Secrest was aware of or should have been aware of these repeatedly grieved issues and personally answered several replies and grievances with ignorant remarks. Dkt. 18, at 13. He further alleges Randall-Secrest refused to re-house him after his disciplinary segregation was over. *Id.* These vague, conclusory allegations are insufficient to state a claim. Mr. Rawlins fails to explain when or how Randall-Secrest refused to re-house him or how this violated a constitutional right. Accordingly, the Court recommends this claim be dismissed without prejudice.

### 7. Opportunity to Cure

Mr. Rawlins has already amended his complaint once. However, if Mr. Rawlins believes

1    he can cure the defects in his amended complaint identified in paragraphs numbered 2-6 of this

2    sub-section, he may submit a second amended complaint with his objections, if any, to this

3    Report and Recommendation.

4    **F.    Addendum to Amended Complaint**

5      On June 24, 2019, Mr. Rawlins filed a document entitled "addendum" to his amended

6    complaint. Dkt. 27. However, Mr. Rawlins may not file a further amended complaint at this point

7    without leave of the court. Furthermore, in this "addendum" Mr. Rawlins seeks to add several

8    new claims, unrelated to the claims raised in his original or amended complaint. Unrelated

9    claims against different defendants belong in different suits, not only to prevent the sort of

10   morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

11   pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

12   frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28

13   U.S.C. § 1915(g)." *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007); *see also* Fed.R.Civ.P.

14   20(a) (2) (joinder of defendants not permitted unless both commonality and same transaction

15   requirements are satisfied). Mr. Rawlins may not change the nature of this suit by alleging new,

16   unrelated claims as an "addendum" filed nearly a month after his amended complaint. *George*,

17   507 F.3d at 607 (no "buckshot" complaints). The Court also notes that the new allegations in the

18   addendum are vague and conclusory and fail to set forth sufficient facts to state a claim.

19     Accordingly, the Court should decline to consider this "addendum" and direct the Clerk

20   to strike it from the docket.

21              **CONCLUSION**

22     The Court recommends that Mr. Rawlin's amended complaint (Dkt. 18) be accepted and

23   deemed properly filed. The Court recommends that the Clerk be directed to add c/o Kwant as a

named defendant on the docket. The Court recommends that the "addendum" to the amended complaint be stricken as improperly filed. The Court recommends that Mr. Rawlins' motion to strike defendants' motions to dismiss/for summary judgment and related documents (Dkts. 14, 15, 16, 17) be **DENIED**. The Court recommends that defendant Marlow's and defendant Harlan's motions for summary judgment (Dkts. 14 and 15) be **GRANTED** and that the claims against them be dismissed without prejudice.

Furthermore, having screened the remainder of the amended complaint, the Court recommends that Mr. Rawlins' Due Process claim against c/o Kwant related to his disciplinary charge regarding the broken toilet also be permitted to proceed and that the Court **direct the Clerk to serve the amended complaint on c/o Kwant**. The Court recommends the remainder of the claims raised in Mr. Rawlins' amended complaint be **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B)(ii). If Mr. Rawlins believes he can cure the defects in these remaining claims in his amended complaint identified by the Court (at subsections 2-6 of section E above), he may submit a second amended complaint with his objections, if any, to this Report and Recommendation. The Court recommends this matter be **referred back** to Hon. Brian A. Tsuchida for further proceedings.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 19, 2019**. The Clerk should note the matter for **August 23, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

- 24

after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses **shall not exceed ten (10) pages**. The failure to timely object may affect the right to appeal.

DATED this 5th day of August, 2019.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge